UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LARA DUCKETT,

                    Plaintiff,                         **DECISION**
v.                                                     **and ORDER**

WAL-MART STORES, INC.,                                 07-CV-6204

                    Defendant.
_____

## <u>INTRODUCTION</u>

Plaintiff Lara Duckett, ("plaintiff" and/or "Duckett"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), and the New York State Human Rights Law ("NYSHRL") against her former employer Wal-Mart Stores, Inc, ("defendant" or "Wal-Mart") claiming that she was subject to hostile work environment on the basis of sex and retaliated against for complaining of discrimination. Specifically, plaintiff alleges four causes of action: (1) discrimination in the form of unlawful hostile work environment based on sex in violation of Title VII; (2) discrimination in the form of unlawful hostile work environment based on sex in violation of the NYSHRL;[1] (3) retaliatory discharge for having engaged in protected activity in violation of Title VII; and (4) retaliatory discharge in violation of NYSHRL.

_____

[1] Plaintiff concedes that summary judgment is warranted as to her hostile work environment claims. <u>See</u> Pl. Opp. Br. at 3. Accordingly, plaintiff acknowledges that her only causes of action in this suit is for retaliation under federal and state law. Thus, plaintiff's hostile work environment claims (Counts I and II) are dismissed with prejudice and the Court will only address the retaliation claims (Counts III and IV)..

Defendant denies plaintiff's allegations, and moves for summary judgment dismissing plaintiff's Complaint on grounds that plaintiff has failed to state a prima facie case of retaliation. According to the defendant, Duckett cannot establish that she engaged in any protected activity known to Wal-Mart at the time of her discharge. In addition, defendant argues that plaintiff cannot demonstrate a causal connection between her complaints and her discharge years after her initial complaint and at least six months following her final complaint. Further, defendant contends that even if plaintiff were able to prove a prima facie case of retaliation, Wal-Mart articulated a non-retaliatory reason for its decision to discharge her and plaintiff failed to establish that Wal-Mart's stated reason is pretextual. For the reasons set forth below, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety.

## BACKGROUND

Preliminarily, this Court must review the requirements of the Local Rules of Civil Procedure. Local Rule 56 provides: "In any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be annexed to the notice of motion "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56.1(a). Defendant has complied with this rule. See Docket #16. "The papers opposing a motion for summary judgment shall include a separate, short, and concise

statement of the material facts as to which it is contended that there exists a genuine issue to be tried." See id. 56.1(b). "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." See id. 56.1(c). In other words, the moving party must set forth the material facts that it contends are not in dispute, whereas the non-moving party must then set forth the material facts that she contends are in dispute (i.e., material facts as to which she contends that there is a genuine issue).

Plaintiff, however, submitted a "Plaintiff's Response to Defendant's Statement of Material Facts" ("Responding Statement") that contained 163 separate paragraphs, many containing multiple statements, which failed to specifically controvert the defendant's Statement Of Material Facts in many respects.[2] See Docket #25. Although plaintiff's Responding Statement sets forth some facts that appear to somewhat contradict defendant's Statement Of Material Facts ("DSMF"), it nonetheless includes facts that are contained in DSMF i.e., facts about which there is no disagreement and that create no genuine issue of material fact. Consequently, plaintiff's Responding Statement has the effect of causing confusion and obscuring the record. Further, it fails to specifically set forth which facts

---

[2]Such failure to abide by Loc. Rule 56 does not "streamline the consideration of summary judgment motions by freeing [this Court] from the need to hunt through voluminous records without guidance from the parties." See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir.2001) (discussing Rule 56.1 of the Loc. Rules of Civ. Proc. for the Southern and Eastern Districts of New York which is essentially the same as Loc. Rule 56).

create a genuine issue of material fact--as opposed to a recitation of all the alleged facts.

As this Court held in <u>Kuchar v. Kenmore Mercy Hosp.</u>, 2000 WL 210199, at *1 (W.D.N.Y.2000) "[w]hile the consequence of this miscue is minimal given the general consensus between the parties [as shown by defendant] as to the constituent facts of this case, where a discrepancy exists this Court is obligated to and will 'deem admitted' the [moving party's] version of the facts... [although] the Court is [also] obligated to and will believe the [non-moving party's] evidence and all justifiable inferences will be drawn in [her] favor."[3] The relevant facts that the court deems undisputed, based on the Complaint, the parties' 56.1 Statements (as limited by invocation of the Local Rule), and other materials submitted in connection with defendant's motion for summary judgment, are as follows:

## I. Plaintiff's Part-Time Employment At Wal-Mart's Canandaigua Store from April 1994 to November 1998

Plaintiff Lara Duckett began working as a part-time pharmacy associate in the Pharmacy Department of Wal-Mart's Canandaigua store on April 5, 1994. Richard Skrypek ("Skrypek") became the Pharmacy Department Manager of the Canandaigua store in June 1994 and he continues to hold the same position to this day. Plaintiff was

---

[3] <u>See Holtz</u>, 258 F.3d at 73-74 ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules"); cf. <u>Covelli v. Nat'l Fuel Gas Distrib. Corp.</u>, 2001 WL 1823584, at *1 (W.D.N.Y.2001) (holding that the district court "may, but is not required to, search the record for evidence which the party opposing summary judgment fails to point to in his Loc. Rule 56 statement. Inasmuch as the citations to the record in defendant's Statement support its factual assertions, this Court declines to search the record in an attempt to find evidence contradicting such when plaintiff has failed to do so....") (citations omitted).

employed part-time in the Pharmacy Department at the Canandaigua store from April 1994 until she transferred to a full-time position in the Pharmacy Department of Wal-Mart's Henrietta, New York store in November 1998. From April 1998 through October 1998, plaintiff claims that she notified Skrypek on multiple occasions that she wanted to work full-time. However, plaintiff alleges that whenever she asked Skrypek about a full time position at the Canandaigua store, he allegedly said that he was "too busy to discuss," or had not "had a chance to speak to anybody about it, but...will get to it," or defendant was not hiring anyone full time in the Pharmacy Department of the Canandaigua store at that time. Notwithstanding, plaintiff concedes that after her October 1998 request, "[w]ithin a week," Skrypek asked her if she was interested in a full time pharmacy technician position available at the Henrietta store since the Canandaigua store could not offer her full time work at that time. Plaintiff accepted the full time position at the Henrietta store.

## II. <u>Plaintiff's Full Time Employment at Wal-Mart's Henrietta Store</u>

From November 1998 to August 2000 plaintiff worked full time as a pharmacy technician in the Pharmacy Department at the Henrietta store. Thereafter and effective August 25, 2000, plaintiff transferred to a full time pharmacy technician position in the Pharmacy Department at the Canandaigua store where Skrypek was still the Pharmacy Department Manager.

### III. __Plaintiff's Full Time Employment At Wal-Mart's Canandaigua Store from August 2000 to December 2004__

Plaintiff was employed at the Canandaigua store from August 2000 until her termination in November 2005.[4] Plaintiff argues that when she returned to work in the Pharmacy Department of the Canandaigua store in 2000, Skrypek and plaintiff's co-worker, Patty Chesbro ("Chesbro") made remarks about the fact that plaintiff is a blonde, and they "would say 'the reason why Plaintiff ever got hired in the first place was that she was a cute little blonde thing.'" See Deposition Transcript of Lara Duckett ("Duckett Dep.") at 188, 190-193, 260. In addition, plaintiff contends that Skrypek treated her differently when compared to her female co-workers in the Pharmacy. Specifically, plaintiff alleges she was "always blamed for everything" and called a "blonde," always worked every holiday weekend, was "the only one" that was required to find someone to cover for her when she had a death in the family in 2001 and needed to take time off. See Duckett Dep. at 183-185, 188-193. Moreover, plaintiff claims that Skrypek was not "so harsh in tone of voice" when he spoke to plaintiff's co-workers. See id. at 237-238. Further, plaintiff states that Skrypek had "rules for her and rules for everyone else." See id. at 179-180. According to plaintiff, in the winter of 2003, she was only allowed to drink water while her co-workers were allowed to have soda or coffee.

---

[4]During plaintiff's full time employment at the Canandaigua store, she received regular pay increases and she successfully completed the training requirements for second level pharmacy technician.

Plaintiff contends that she began complaining to Skrypek regarding his treatment of her in 2003. However, when she complained to Skrypek, he informed her that her concerns were petty and that, when she complained about working on every holiday weekend, he said she should not complain because she had "no obligations, such as children, a husband not even a boyfriend." See id at 189; see also Compl. at ¶17. In October 2003, plaintiff claims that Skrypek changed her weekend schedule without consulting her. When plaintiff expressed her dissatisfaction with the change to the Pharmacy Department staff, Skrypek allegedly grabbed her arm, pulled her out of the pharmacy and told her to stop discussing the matter. See Duckett Dep. at 195-197. Moreover, plaintiff contends that in November 2004, while she was away on vacation, Skrypek and Chesbro "had loud discussions for other people to hear," in the Pharmacy Department in which they said "the only way the guy that [plaintiff] was going to visit was going to marry [her] was if she became pregnant, [and] [t]hat [plaintiff] would be coming back from [vacation] barefoot and pregnant, as that was the only way [she] would gain a husband." See id. at 230-232.[5]

**IV. Events from December 2004 through Plaintiff's Termination**

In December 2004 plaintiff spoke to Skrypek's supervisor, Pharmacy District Manager Andrew Olechowski ("Olechowski") regarding

---

[5]Skrypek denies that he made comments referring to plaintiff as a "blonde" or any other derogatory comments, and he denies discussing plaintiff's marital status with other employees or making any remarks about plaintiff's marital status. See Deposition Transcript of Skrypek ("Skrypek Dep.") at 68-74. However, defendant accepts plaintiff's deposition testimony as true for purposes of this summary judgment motion only and reserves the right to contest plaintiff's testimony at trial.

the issues she was having with Skrypek. According to plaintiff, she informed Olechowski that she "was having issues in the pharmacy, that [she] had them for a number of years, and that it had finally gotten to the point where [she] could not deal with things anymore[.]" See Duckett Dep. at 239-241. Plaintiff claims she told Olechowski about the difficulties she was having with respect to scheduling vacation time, other scheduling problems as well as comments made while she was on vacation and "about the rules for [her] and the rules for other people," about "being told [her] concerns were petty," and how she "was being treated differently than other girls." See id.[6] Plaintiff admits that before speaking to Olechowski in December 2004, she had not raised any concerns with his predecessor or any other Wal-Mart manager, about any issues that she has alleged occurred in the Pharmacy Department of the Canandaigua Store.

Plaintiff claims that in January 2005, she found her co-worker Chesbro's paycheck left in plain view in the Pharmacy Department at the Canandaigua Store. Plaintiff "mistakenly" looked at it and learned that Chesbro was only earning two cents less an hour than she. Plaintiff alleges that while both women held the position of pharmacy technician, she felt that she had more experience and should be paid much more than Chesbro. According to plaintiff she raised this issue with Olechowski and a week after she complained

---

[6]There is some confusion as to plaintiff's testimony regarding the substance of her conversation with Olechowski. For instance, she testified that during this conversation she told Olechowski about having seen Chesbro's paycheck. However, plaintiff's response to Interrogatories state that she saw Chesbro's paycheck in January 2005. Accordingly, plaintiff could not have mentioned this issue to Olechowski in December 2004.

"concerning actions and events that upset" her, plaintiff's co-worker informed her that Skrypek was heard "screaming at" Olechowski on the phone that plaintiff "needed to be terminated for insubordination regarding looking at [Chesbro's] paycheck." See Duckett Dep. at 232-233.

In February 2005, plaintiff received her annual performance review, which rated her performance "Meets Expectations." Plaintiff signed the review and did not appear to have any disagreements with it.[7] However, a few days later she expressed her disagreement with a comment Skrypek made in the "Areas for Improvement" section that stated plaintiff needed "to work as one team in the pharmacy." See id. at 224-225. Plaintiff claims she asked Skrypek what he meant by the comment, "to work as one team in the pharmacy," and he responded, "there was no unity to the pharmacy, and that [plaintiff] was the reason for all the animosity in the Pharmacy Department[.]" See id. at 225-229. According to plaintiff, she informed Skrypek that she disagreed with his comment and "felt that he was not looking at the entire situation as a whole, and that [she] was being singled out and [she wanted [the comment] changed off of [her] review," but Skrypek refused to change her review. See id. at 226-229. In addition, plaintiff "felt that this [comment on her review] was just a personal attack on [her] by...Skrypek." See id. Plaintiff claims that she spoke to Olechowski in April 2005 regarding her February 2005

---

[7]Indeed plaintiff wrote on the performance review as follows" "I will continue to do my job to the best of my abilities and will work to do better in the things that need improvement. Note on days absent - med excuses...." See Affidavit of Marguerite Stepson Wynne ("Wynne Aff."), Ex. V. at 2.

performance review. After she spoke to Olechowski, plaintiff alleges that Skrypek grabbed her arm and took her aside in the pharmacy where he screamed and said she should "feel free to talk to whoever [she] want[s]," the performance evaluation will not change. Plaintiff alleges that her last complaint to Olechowski was in May 2005.

In November 2005, Skrypek raised a concern regarding an American Legion discount given on a pet prescription at the Canandaigua store pharmacy. The American Legion discount number at issue belonged to plaintiff. On November 8, 2005, Loss Prevention Supervisor Leigh Peacock ("Peacock") commenced his investigation of this matter. The day following, Peacock asked to speak to plaintiff privately regarding the American Legion discount. At her meeting with Peacock, plaintiff did not deny that the discount number at issue was hers, but she repeatedly denied that she gave her discount number to someone else to use. See Wynne Aff. Ex. W at 6, Ex. Y, Ex. Z at 14-15. Plaintiff informed Peacock that she had no idea how her discount number got on other people's accounts and while she did not identify the associate, plaintiff suggested that "another associate went in and put her number in." See Wynne Aff. Ex. Z at 8-10. Thereafter, plaintiff was placed on unpaid suspension pending outcome of the investigation by defendant.

Peacock discovered during his investigation that a number of prescriptions filled over a period of time for which records showed plaintiff's discount number was used. After discussing the investigation with Olechowski in regard to how the pharmacy operated,

and after reviewing all of the facts, Peacock determined that plaintiff did not act responsibly to ensure that her personal American Legion discount card was not misused (even assuming she had not expressly given the unauthorized discount herself, which appeared unlikely, if not impossible according to defendant). As a result, Olechowski concluded that plaintiff should be held accountable for the unauthorized discounts and plaintiff was terminated on November 14, 2005. See id. at 12,16.

## V.    Equal Employment Opportunity Commission ("EEOC") Charge

On July 14, 2006, seven months after plaintiff's termination, she filed a charge of discrimination with the EEOC alleging for the first time that she suffered harassment and discrimination on the basis of sex and was retaliated against for raising a complaint regarding same.[8] The EEOC issued its determination on January 24, 2007 concluding that "[t]he evidence fails to indicate that a violation of the law occurred and it is not likely that additional investigation will result in our finding a violation." See Wynne Aff. Ex. BB. The EEOC further determined that "the conduct [plaintiff] alleged was not severe or pervasive enough to establish a hostile environment under Title VII." See id.[9] In addition, the EEOC concluded that "[t]he evidence failed to show [plaintiff] engaged in a protected activity

---

[8] The allegations in the Complaint states that plaintiff filed a charge of discrimination with the EEOC on July 14, 2006. See Compl. ¶2. However, a copy of the EEOC charge produced in discovery shows that it was "[r]eceived 21 Jul 2006 E.E.O.C. Bulo." See Wynne Aff. Ex. CC.

[9] EEOC stated that "[b]ased on the fact that all other members of the department were also female, it defeats a discriminatory animus based on gender." See id.

as defined by the statutes" and that "the discharge was based on factors other than sex or retaliation." See id. Thereafter, plaintiff filed the Complaint in this action on April 20, 2007.

**DISCUSSION**

### I.   Defendant's Motion for Summary Judgment

A motion for summary judgment shall be granted if the pleadings demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this showing is made, the nonmoving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir.2003) (internal citations and quotation marks omitted), but must present specific evidence in support of its contention that there is a genuine dispute as to the material facts. See Fed.R.Civ.P. 56(e). The Court resolves all ambiguities and draws all factual inferences in favor of the

nonmovant, but "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) (citing Fed.R.Civ.P. 56(c)).

Summary judgment dismissing an employment discrimination case is warranted only where a plaintiff cannot provide evidence to support an essential element of her claim. See Schanbel v. Abramson, 232 F.3d 83 (2d Cir. 2000); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998). However, where a plaintiff claims he or she is the victim of unlawful discrimination, an award of summary judgment is ordinarily inappropriate. See Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir.1991). As the Second Circuit has recognized, employment discrimination

> is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave a "smoking gun," such as a notation in an employee's personnel file, attesting to a discriminatory intent. A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence.

See id. (internal quotations omitted). Nonetheless, to defeat a motion for summary judgment, a plaintiff must rely on more than mere conclusory allegations that the discrimination occurred. "Indeed, the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials--apply no less to discrimination cases than to commercial or other areas of litigation." See Meiri v. Dacon, 759 F.2d 989,998 (2d Cir.1985).

## II. **Plaintiff has failed to establish a Prima Facie Case of Retaliation**

As stated above, plaintiff now acknowledges that her only cause of action in this suit is for retaliation under both federal and state law.[10] Plaintiff claims that she was retaliated against by the defendant for complaining of discrimination in the form of hostile work environment based on sex. She claims that after she complained of unfair treatment, her supervisor began complaining about her work performance, and she was eventually terminated from her employment.

Retaliation claims brought pursuant to Title VII are analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas, 411 U.S. at 802. Under this test, for a plaintiff to prevail she must first establish a prima facie case of discrimination by showing: (1) she engaged in a protected activity; (2) she was performing her occupational duties satisfactorily;(3) she was subjected to an adverse employment action; under (4) circumstances giving rise to an inference of unlawful discrimination. See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991); Schanbel v. Abramson, 232 F.3d 83 (2d Cir.2000). Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason ("LNDR") for the adverse employment action. Once the defendant proffers a LNDR, the

---

[10]The principles governing discrimination claims under Title VII and the NYSHRL are virtually identical, and as such both claims are evaluated using the same analytical framework. See Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001); Ferrante v. American Lung Assoc., 90 N.Y.2d 623, 629 (1997). Discrimination claims brought pursuant to Title VII (and the NYSHRL) are analyzed under the McDonnell Douglas burden-shifting test. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

burden then shifts back to the plaintiff to show that the defendant's LNDR was pretextual and that the defendant's real motivation was discriminatory. <u>See</u> <u>id</u>.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. <u>See</u> <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 68 (2006); <u>Holt v. KMI-Continental</u>, 95 F.3d 123, 130 (2d Cir. 1996), <u>cert</u>. <u>denied</u>, 1997 WL 71191 (May 19, 1997); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted).

A.  Plaintiff has failed to allege that she engaged in a protected activity.

Title VII prohibits retaliation by an employer against an employee in cases where the employee has engaged in protected activity under the statute. "Protected activity" includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII. <u>See</u> 42 U.S.C. 2000e-3(a); <u>see also</u> <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir.2000) ("The term 'protected activity' refers to

action taken to protest or oppose statutorily prohibited discrimination.") Specifically, Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees...because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

See 42 U.S.C. 2000e-3(a).

In the instant case, plaintiff has failed to establish that she engaged in a protected activity either under Title VII or the NYSHRL. The record indicates that plaintiff complained to Olechowski in December 2004 about the difficulties she was having scheduling vacation time as well as other scheduling problems and being told by Skrypek that her concerns were petty and that he treated her differently than other females in the Pharmacy Department. However, there is no admissible evidence in the record suggesting that the plaintiff complained of unlawful discrimination on the basis of sex (or any other discrimination made unlawful by Title VII) on this occasion. See Int'l Healthcare Exchange, Inc., v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y.2007) (to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring); see also Ramos v. City of New York, 1997 WL 410493, at *3 (S.D.N.Y.1997) (stating that "when complaining about a supervisor, in order to be protected activity the complainant must put the employer

on notice that the complainant believes that discrimination is occurring").

According to the plaintiff's deposition testimony, Duckett did not complain of sex based discriminatory treatment in December of 2004. Rather, Duckett testified that she told Olechowski about the difficulties she was having with respect to scheduling vacation time, other scheduling problems as well as comments made while she was on vacation and "about the rules for [her] and the rules for other people," about "being told [her] concerns were petty," and how she "was being treated differently than other girls." See Duckett Dep. at 239-241. Plaintiff's complaints, however, do not constitute protected activity. At no time did Duckett allege that she was being treated differently because she was a woman, or that Skrypek treated her or other women differently because of their gender or sex. Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII. See Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C.Cir.2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no allegation that the treatment was motivated by a discriminatory animus); see also Ochei v. Coler/Goldwater Memorial Hosp., 450 F.Supp.2d 275, 287 (S.D.N.Y.2006) (plaintiff's general complaints about her working conditions did not constitute engaging in a protected activity where plaintiff did not allege that she was a victim of discrimination); McMillan v. Powell,

526 F.Supp.2d 51, 55 (D.D.Cir.2007)(employee's complaint's about supervisor's negative attitude towards her not protected activity where complaints failed to allege that discrimination was the basis for supervisor's attitude); Holt v. Roadway Package Systems, Inc., 506 F.Supp.2d 194, 206 (W.D.N.Y.2007) (employee's claim that supervisor was "out to get him" did not constitute protected activity as complaint did not allege discriminatory animus for supervisor's actions).

In January 2005, plaintiff claims she spoke to Olechowski concerning the amount of her pay compared to her co-worker Chesbro's pay. However, plaintiff's complaint concerning a co-worker's paycheck cannot reasonably be found to have been opposing unlawful discrimination. See Montanile v. Nat'l Broadcast Co., 211 F.Supp.2d 481, 488 (S.D.N.Y.2002) (Complaints regarding violation of employer policies unrelated to impermissible discrimination do not fall within the scope of Title VII, and, therefore, do not qualify for protection under the statute). In February 2005, plaintiff had her performance review and although she signed it, a few days later she had a disagreement with Skrypek's comment. According to plaintiff, she informed Skrypek that she disagreed with his comment in the review and "felt that he was not looking at the entire situation as a whole, and that [she] was being singled out and [she wanted [the comment] changed off of [her] review," but Skrypek refused to change her review. See Duckett Dep. at 226-229. In addition, plaintiff "felt that this [comment on her review] was just a personal attack on [her]

by...Skrypek." See id. Again, however, Duckett made no claim that she was treated differently because of her sex/gender.

Further, plaintiff claims that she spoke to Olechowski in April 2005 regarding her February 2005 performance review. After she spoke to Olechowski, plaintiff alleges that Skrypek grabbed her arm and took her aside in the pharmacy where he screamed and said she should "feel free to talk to whoever [she] want[s]," the performance evaluation will not change. Plaintiff alleges that her last complaint to Olechowski was in May 2005. Plaintiff never suggested in the complaints she made to defendant's managers that Skrypek's "unfair" and "different" treatment of her had anything to do with her membership in a class protected by Title VII or the NYSHRL. Clearly, plaintiff's complaints were not protected activity under Title VII, as they did not relate to discrimination based on any attribute protected under Title VII. See Kelley v. Sun Microsystems, Inc., 520 F.Supp.2d 388, 403 (D.Conn.2007) (to constitute protected activity, complaint must be directed to activity that is prohibited by Title VII).

While it is true that a plaintiff need not explicitly allege a violation of Title VII for his or her conduct in making a complaint about working conditions to be considered protected activity, (See Kelley, 520 F.Supp.2d at 403 (employee not required to use "legal terms or buzzwords" when complaining of discrimination)) the plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff

believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by Title VII. <u>See</u> <u>Int'l Healthcare Exchange</u>, 470 F.Supp.2d at 357 (although complaints about conduct clearly prohibited by Title VII "need not mention discrimination or use particular language,...ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity").

In the instant case, plaintiff complained to Olechowski primarily about difficulties in scheduling vacation time as well as other scheduling problems when compared with other female associates in the Pharmacy Department, the amount of her pay compared to a co-worker's pay and plaintiff's perception that Skrypek treated her unfairly and differently compared to the way he treated other women who worked in the Pharmacy Department at the Canandaigua store. There is no admissible evidence in the record suggesting that plaintiff ever told Olechowski or Skrypek or any other manager at Wal-Mart that she felt that she was treated differently in her department because she was a woman or that there was any illegal sex discrimination occurring. Because plaintiff has failed to establish that she engaged in any protected activity with respect to her employment complaints, plaintiff has failed to establish a prima facie case of retaliation.

> **B.** Plaintiff has failed to establish that she was subjected to an adverse employment action or actions which would dissuade a similarly-situated reasonable employee from making a charge of discrimination.

To state a prima facie case of retaliatory discrimination, in addition to establishing that he or she engaged in protected activity, a plaintiff must also establish that he or she suffered an adverse employment action, or was subjected to action that would dissuade a reasonable worker from making or supporting a charge of discrimination. See <u>Burlington</u>, 548 U.S. at 68.[11] Defendant contends that plaintiff's complaint fails to allege evidence establishing an adverse employment action.

To demonstrate the occurrence of an adverse employment action, plaintiff must show that she suffered "a 'materially adverse' change in the terms and conditions of employment." <u>See</u> <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir.2000) (citing <u>Richardson v. New York State Dep't of Correctional Serv.</u>, 180 F.3d 426, 446 (2d Cir.1999)). There is no bright-line rule as to what constitutes an adverse employment action. However, the Second Circuit has held that, in order to qualify as "'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" <u>See</u> <u>Galabya</u>, 202 F.3d at 640 (citation omitted). Examples include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

---

[11]As stated above, I find that the plaintiff has failed to establish that she engaged in any protected activity with respect to her employment complaints made in December 2004, January, February, April or May of 2005.

diminished material responsibilities, or other indices...unique to a particular situation." See id. (internal quotation marks omitted).

Here, the undisputed facts show that, other than plaintiff's termination in November 2005,[12] plaintiff did not suffer any materially adverse employment action during the time period she was allegedly complaining of discriminatory treatment. Plaintiff's allegations that there were problems with scheduling vacation days and other scheduling issues, being yelled at twice by Skrypek and being unfairly criticized, as well as having different rules for her and rules for all the other women in the Pharmacy Department, do not rise to the level of a "materially adverse change" in the terms and conditions of plaintiffs employments since they did not have a material impact on the terms and conditions of plaintiff's employment in any way. See Meder v. City of New York, 2007 WL 1231612, at *4 (E.D.N.Y.2007) ("Unfair criticism and other unpleasant working conditions are not adverse employment actions"); Smalls v. Allstate Ins. Co., 396 F.Supp.2d 364, 371 (S.D.N.Y.2005) ("'being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments...do not rise to the level of adverse employment actions...because they [do] not have a material impact on the terms and conditions of Plaintiff's employment.'" (quoting Lee v. New York State Dep't of Health, 2001 U.S. Dist. LEXIS 11287, at *69 (S.D.N.Y.2001)).

In addition, for purposes of plaintiff's retaliation claim, her allegations that Skrypek treated her differently than all other

---

[12]See Point II.C and Point III below.

employees for years prior to her first alleged complaint of discrimination in December 2004, fail as a matter of fact and law to state a claim for retaliation. It is axiomatic that retaliatory activity cannot occur prior to the incident upon which the retaliation is predicated. Accordingly, plaintiff's complaint that Skrypek treated her differently prior to her alleged complaint of discrimination fails to state a claim of retaliation. Because these acts took place prior to any alleged protected activity, they cannot form the basis of a retaliation claim.

> C.   Plaintiff has failed to establish a causal connection between the protected activity and her discharge

Defendant argues that plaintiff is unable to establish a *prima facie* case of retaliatory discrimination because her employment was terminated at least six (6) months after her last complaint regarding Skrypek's alleged conduct toward her and thus the events are not sufficiently causally connected. <u>See</u> Def. Br. at 6-7.[13] A plaintiff may allege proof of causation indirectly by showing close temporal proximity between the protected activity and the discriminatory treatment. <u>See</u> <u>Gordon v. New York City Bd. of Ed.</u>, 232 F.3d 111, 115 (2d Cir.2000). Plaintiff claims that she was fired in November 2005 in retaliation for her complaints to Olechowski in December 2004, January, February, April and May 2005. Plaintiff did not file an administrative complaint with the EEOC until almost eight months later. While filing an administrative complaint with the EEOC is unquestionably a protected activity, plaintiff has failed to

---

[13]In addition, defendant argues that regardless of whether plaintiff is able to state a prima *facie case*, she is unable to demonstrate that the LNDR offered by Wal-Mart, namely that her employment was terminated because she did not act responsibly to ensure that her personal American Legion prescription discount card was not misused, was pretextual. The Court finds that these arguments are meritorious.

establish any causal connection between the alleged protected activity in December 2004, January, February, April and May 2005 and her termination from her employment six months later in November 2005.

Several courts in this Circuit have held that where an adverse employment action occurs long after the plaintiff engaged in a protected activity, such an action cannot support an inference of retaliatory discrimination. See Yarde v. Good Samaritan Hosp., 360 F.Supp.2d at 552, 562 (S.D.N.Y.2005) ("[t]hree months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation. Six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation"); Cunningham v. Consol. Edison Inc., 2006 WL 842914, at *19 (E.D.N.Y.2006) (three months too remote and "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85 (2d Cir.1990) (three months too remote); James v. Newsweek, 1999 WL 796173, at *15 (S.D.N.Y.1999) (four months too remote); Woods v. Enlarged City Sch. Dist. of Newburgh, 473 F.Supp.2d 498, 529 (S.D.N.Y.2007) (five month time lapse precludes a finding of causal connection). In this case, the alleged adverse action-plaintiff's discharge in November 2005-took place six months after plaintiff alleges she complained for a final time to Olechowski in May 2005 i.e. the alleged protected activity. Thus, the timing of plaintiff's discharge demonstrates no causal link between the protected activity she engaged in, and her termination.

### III. **Legitimate, Non-discriminatory Reason and Pretext**

Defendant argues that, even assuming arguendo that the plaintiff has stated a *prima facie* case of retaliation, the company has stated a LNDR for its decision to discharge plaintiff. Defendant claims that plaintiff was terminated because after an investigation and after reviewing all of the facts, it determined that plaintiff did not act responsibly to ensure that her personal American Legion discount card was not misused (even assuming she had not expressly given the unauthorized discount herself, which appeared unlikely, if not impossible according to defendant). Accordingly, defendant concluded that plaintiff should be held accountable for the unauthorized discounts and thus plaintiff was terminated on November 14, 2005. Defendant contends, therefore, that the burden of production shifts back to the plaintiff (the burden of persuasion remains with the plaintiff at all times) to show that the employer's stated reason was merely a pretext and that retaliatory animus was the true reason for the discharge. <u>See</u> Def. Reply Br. at 7; <u>see also</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993); <u>Reeves v. Sanderson Plumbing Prods., Inc.</u> 530 U.S. 133, 246 (2000).

Plaintiff argues that defendant's stated reason for her firing is pretextual because defendant "'cannot prove that Plaintiff was the one who used the discount card,'" and "'it would be impossible to know who actually used it.'" <u>See</u> Def. Reply Br. at 8. However, when analyzing a pretext claim the inquiry is whether the employer's stated reason is the actual reason for the challenged action and not whether the employer's stated reason for its decision is ill-advised, mistaken or unreasonable. <u>See</u> <u>Dieter v. Continental Group, Inc.</u>, 859

F.2d 1108, 1116 (2d Cir.1988) (The tendered legitimate, nondiscriminatory reason "tendered need not be well-advised, but merely truthful"). As the Second Circuit explained in Dieter, "[t]he distinction lies between a poor business decision and a reason manufactured to avoid liability." See id.; see also DeMarco v. Holy Cross High School, 4 F.3d 166, 170-71 (2d Cir.1993). It is not for this Court to second-guess the wisdom of the defendant's decision.

In sum, it cannot be said, on the facts before me, that Wal-Mart's decision to terminate plaintiff "was so lacking in merit as to call into question its genuineness." See Dieter, 859 F.2d at 1116. Plaintiff failed to produce evidence suggesting that Olechowski did not honestly believe that plaintiff did not act responsibly to ensure that her personal American Legion prescription discount card was not misused to give unauthorized discounts, or that this was not the actual reason for her discharge. Having failed to meet her evidentiary burden, defendant is entitled to summary judgment on plaintiff's discrimination claims as a matter of law. See id. ("Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons"; "it is not the function of the fact-finder to second-guess business decisions.")

Because I find that plaintiff has failed to state a claim for retaliation, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety with prejudice.

## **CONCLUSION**

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          April 14, 2009